Good morning, Your Honors. Good morning. Brian Selvin on behalf of Kevin Liebeck as the Trustee of the Denny Steelman Estate. May it please the Court. Your Honors, we are here today off of a granting of a summary judgment motion, which essentially determined that Mr. Steelman, in his individual capacity, was jointly and severally liable for the withdrawal liability under ERISA for his former company, Action Electric. Today I'd like to address three issues with you, if I may, that we believe were reversible error and should be taken up by this Court. The first briefly has to do with the fact that Action Electric was in bankruptcy at the time that the notice of withdrawal liability was sent out to Mr. Steelman and to several other parties. Now, we recognize, and my colleague has pointed out in his opposition, that there's really not much case law dealing with this in this circuit. And the case law that does address it, frankly, has gone the other way than we would suggest. But I would suggest to Your Honors that that case law, first of all, does not deal with the particular circumstances that we have here. And also, all of those cases, the opinions have acknowledged sort of the harshness or the severity or the lack of practicality in their decisions. And I would suggest the Ninth Circuit should decline to follow that rationale. Can I ask you a question about that? Sure. I want you to know it's very hard to get your mind around this fact pattern, and I've gone through it many times, and each time there's a little wrinkle. But I think ultimately it's come down to this, and it's a question for you. Okay. So this side gives you the notice you owe $1.4 million to Steelman. Steelman doesn't bring the arbitration within 90 days, 60 days. The statute flat out says then he waives the right to challenge the $1.4. That's what the statute says. Now, your argument is, well, there was a bankruptcy, and the automatic stay in the bankruptcy cast a cloud over what Steelman could do. But here's a question for you. Why couldn't Steelman, on the day he got the notice from the union, from the trustees, go and say, look, let's go to the bankruptcy court and get permission to either bring the arbitration or get the bankruptcy judge to enlarge the stay to say that we don't have to litigate this issue now? It seems to me that that was a path that was open to Steelman, and instead of doing that, he did zero, and now he's complaining that he's stuck with the $1.4, or his estate is. So why couldn't he, why couldn't Steelman and his lawyer have gone to the bankruptcy court to have gotten relief from the 60-day requirement? Your Honor, thank you. You're right. This is a complicated fact pattern, and I think we've been living it for five years now, and it's still, I think about it at night. The facts were that Action Electric was in bankruptcy. Steelman, and I think it's important, several other people were given this notice as well, which I think is important and I'll reference in a moment, but his nephew, Scott Steelman, was given this notice. His daughter, Jody Steelman, was given this notice. It seems like the trustees picked every Steelman in the book. The question is why didn't Steelman and his lawyer go to the bankruptcy court to get relief from the 60-day thing? From what I understand, Your Honor, there were communications with the bankruptcy trustee, and the bankruptcy trustee attorney sent, I think it was an email, a communication to the plans attorney, saying that, in his opinion, it was a violation of the automatic stay. Mr. Steelman, perhaps unadvisedly, but I believe he relied on that, thinking that . . . Is that in the record? Is this in the record? I will look for it, Your Honor. I think we did include in the record the communications. Okay. This will be yet another wrinkle, but that might be important to know that the trustee did that. So if you could identify that before the hearing is over, that would be very useful. I will look for that. Thank you, Your Honor. Thank you. With respect to that issue also, I think that the construction exemption that we would argue would have precluded any withdrawal liability here is particularly significant when you're talking about whether these other parties that supposedly had joined several liability could have proceeded without actions involved. Again, for example, Scott Steelman, who was Denny Steelman's nephew, had absolutely nothing to do with Action Electric. He was never involved with it at all. He just shared the same last name. They sent him a similar letter. He responded with a letter saying, I don't know what you're talking about. I have nothing to do with Denny Steelman's business. But he didn't demand arbitration. He would have had no reason to. He didn't think that he had anything to do with, again, Action Electric. He knew Action Electric was a bank. What's the point of even raising that? What does that have to do with this case, the case of this Steelman? The concern, Your Honor— He can't say I had nothing to do with it. I mean, that's completely irrelevant. Your Honor, Mike— I'm sure they sent—they may have sent notices to every Steelman in the phone book. Which is my concern, Your Honor. Sure. But so what? But Judge Posner actually said in his case, in his opinion, in the Slotkin case, he said they could have sent it to the Easter Bunny, and the Easter Bunny should have responded and demanded arbitration, and if he didn't, he was out of luck. My concern is that with the principal company in bankruptcy, which is the company that has all the information about construction and construction exemption, again, they, as you said, Your Honor, they could have sent to every Steelman in the phone book and now have essentially had them be in a position where they're defaulting on the $1.4 million, and the only position they have, they're now essentially held to being unable to challenge this on the merits. Well, but those other—the Easter Bunny, that doesn't apply, because we have a real—the real Steelman who was really involved in all this, he did get the notice. And the statute is draconian as can be. It does—but it lists all these issues. You've got to raise them within 60 days in arbitration or you're stuck. That's what our Congress adopted. And so even that issue about contractor and the contractor exemption is one of those things you've got to raise under the statute. It's very draconian. And so that's—it concerns me that it's so draconian, yes, but at the same time, that's what Congress said. And I still think that the proper course would have been for Steelman and his attorney to rush to the bankruptcy court and say, Look at this 60-day problem, Judge, stop this, or at least give us permission to go and arbitrate it. And then we wouldn't have this problem, but Steelman didn't do that. That's why I keep circling back to that solution. Understood, Your Honor. And again, I think that, as you said, it is draconian, it is what the statute says, but the statute—I believe the principles of the bankruptcy law, particularly given how Action Electric would have been involved with the construction exemption, should have created that automatic stay. I disagree with you on that bankruptcy stay issue. Yes, Your Honor. Do you have any other arguments that would suggest that the bankruptcy courts— I mean that the district court's ruling was incorrect? Yes, Your Honor. So, importantly, assuming that the notice was proper here, in order to find that Mr. Steelman in his individual capacity was, again, subject to this withdrawal liability, the plaintiffs, the plan, has argued that essentially Mr. Steelman operated in his individual capacity, a business or trade, and that that business or trade was under common control with Action Electric. We argued to the district court that, in fact, Mr. Steelman in his individual capacity at the time of the withdrawal, which was in 2013, was not operating such a business or trade. The property at issue was the Washington Avenue property. That was the property that Action Electric operated out of. The theory that the plan articulated was essentially, hey, Mr. Steelman bought the Washington Avenue property. He owned it as an individual. He then leased that out to the business, to Action. And by doing so, he entered into a business or trade, and they relied on the LaFrance case for that. The problem with that is that in 2013—I'm sorry, in 2010, when Mr. Steelman's wife passed away, the Washington Avenue trust was placed into an irrevocable trust. So at the time of the withdrawal, Mr. Steelman was not operating as an individual, and he was not operating in a trade or business. Was he in control of that trust? Well, that is the critical question, Your Honor, and I don't believe that— He was the trustee? He was the trustee. But under the regulations, that does not make him, quote, in control. And I think we had this problem in the underlying district court, where the word control has both a common vernacular meaning and a meaning under the regulations. And what I believe the judge did, Judge Selma, when he looked at it, he said— and it's in both his statements in the oral argument and also in the underlying order— he said, look, I think that Steelman was still in control of things. He essentially acted as the trustee. As the trustee, he had the right to lease the property and do these sort of things, and so he controlled. The problem is that's not what the statute says. You mean the regulations? I beg your pardon, yes, the regulations. What do the regulations say on that? The regulations say that in order to constitute control, and this is for the purposes of the brother-sister sort of common control analysis, that they separate it out by entity, and they say in the case of a trust, the individual must have an 80% actuarial interest in the trust. I think this was a problem. In doing the underlying decision, the district court didn't make any reference to that regulation at all. In fact, the district court focused on the powers of the trustee. And I would submit to you that the powers of the trustee cannot be the basis by which it is determined that you have a controlling interest. For example, a third party, you could name Bank of America as a third party trustee, and they would have all sorts of powers as trustee, and they would be dealing with presumably thousands of trusts all over. It cannot be the case that as a trustee that those powers make the trust come under common ownership and common control. The analysis is supposed to be the actuarial interest as a beneficiary. In fact, we currently have a related case where the plan is arguing that the bypass trust is also liable. And in that, there was also a summary judgment motion, which was denied because the court said, I don't have sufficient actuarial information. The plan has not presented any actuarial information as to whether Mr. Steelman actually controlled the bypass trust. I believe, frankly, that the district court's decision is evolving as these cases have been before him. But in this case, he did not look at the actuarial interest at all. Was the actuarial percentages presented to the district judge? They were not. How about by you? They were not. It was the plan's burden of proof. The plan had the burden of proof to establish that there was controlling interest. They did not establish anything. They did not present any information as far as life expectancy or what Mr. Steelman's actuarial interest in the trust was. Presumably, well, you tell me what the record shows, but he presumably had a life interest in the income from the trust and the ability to direct at least half of where the other half went. I don't know. Is that right? That's the way a lot of them work. I don't think so, Your Honor. The trust documents are in the record. The trust documents are in the record. He had certain powers as trustee. But again, remember, we're talking about an irrevocable trust. But he had the life interest in the trust, didn't he? He had certain rights that were HEMS standards, health, education, maintenance, and support. Well, he was alive. He could borrow money out of the trust. He has a life interest. He had certain rights, which the trust said, and the documents specifically said, that he had to take into account his actual other circumstances. He had an unfettered right to a 5% interest in the estate of the trust for each year. He also had HEMS rights. But under the HEMS rights, and this is something we're now arguing in the second case, they had to be reasonable, and there are limits under California law as far as he had a fiduciary obligation not to just expend these assets. He could not have gone to Vegas and gambled them away. He could not have bought them. In any case, obviously, some fact finder has to make a finding, right, as to what percentage his control as a trustee amounts to. Is it 80%? I think that would be required. And no such finding was made. Correct. You're over your time. I'll give you a minute for rebuttal. Thank you. We'll hear from you. We'll hear from you. Yes. Good morning. If it pleases the Court, Paul Moorhead for Pelley, the pension plan. On this bankruptcy issue, I think you're correct that Mr. Steelman could have done things to protect himself. Is that letter from the trustee or e-mail the counsel is referring to, is that in the record? I'm unsure if that's in the record or not. But there's other more formal things that could have been done. And I think that Judge Posner in the Slotkey case references that. He could have acted under 1399b-2. I think he called it the conciliation process where he could have responded to the notice and said, here are my problems with it. Here's my evidence that would rebut it. And the plan would be required to give him a response on that. Number two, he could have gone to the bankruptcy court and filed something in the bankruptcy court saying, this needs to be dealt with before this arbitration period finishes. Judge Posner points out he could have filed a declaratory relief action in the district court and said, look, I'm being brought in as a common control entity. I want that to be figured out before I'm going to have to arbitrate these other issues. He also could have just initiated arbitration. As discussed in our brief, within that arbitration, he could have taken discovery. He could have subpoenaed documents. And this idea of him not being able to arbitrate the construction industry exception, it makes little sense as he was the president and sole owner of Action Electric. If there was any party who had the ability to arbitrate sort of the type of business that Action Electric was operating, it was certainly Denny Steelman. Moving on to this idea of common control and trader business, I think there's some confusion that's brought of his relationship to the Bypass Trust and what that means. This isn't a case against the Bypass Trust. This is a case against Denny Steelman. And the main issue on that is whether he individually operated a trader business. The law is clear that leasing property to withdrawing employers is categorically a trader business. So based on this clear statement of the law, we look at this Washington Avenue property. In his answer, Mr. Steelman admitted that he owned the Washington Avenue property. In discovery, the plan asked for... But didn't after the answer, the wife died. Is that part right? No. And then the trust became irrevocable? No. Or is that not the right sequence? Not the right sequence. The wife died in 2010. But you're saying in the answer, Steelman admitted he was the owner and not the trust? That's correct. And did that ever get fixed up? No, no amendment was ever made to that. Well, if that's the case, why does the district court in its order on your motion to summary judgment go into this trust? It was brought up in opposition to the summary judgment motion. So the court considered the merits of that position despite what's in the answer? That's correct. All right. So we can consider it too? You can consider it. So you have to address it? And I'll address it. But I think you can also rule... Well, but if you address it though, what's your answer to your opponent's position that, well, the district court's analysis of liability as a trustee is completely unrelated to the requirements of the regulation? So the regulation requires a trader business. That's the regulation. That's what we're looking at as far as... I'm sorry. The regulation requires what? That Denny Steelman be operating a trader business. That's... No, no, no, no, no. He's a... I'm saying the district court went into the fact that, you know, there's this trust and Steelman was a trustee of the trust and he said that doesn't matter now. Sure. Question is, why doesn't it matter that he's a trustee of the trust and the trust actually owns a property? The... According to the district court, it's because he still had control. Because he had... He did have control under the regulations. He controlled the property by leasing the property to... No, under the regulations, as a trustee, you have to meet certain conditions in order to be deemed to be in control. Right? Understood. And this is... All right. Now, how does he meet those regulations? This is in control of the bypass trust. Right. This isn't... And that issue's being... The bypass trust is the owner of the property. And that issue's being litigated right now. That's what? That issue's being litigated in the bypass trust case. The issue out here was... Well, he says... Well, you know, contrary to what his answer is, you know, his position is I didn't own the trust at the relevant time. Right. And there's no... At the relevant time, the trust was owned by this... The property. This property was owned by the irrevocable trust. So, number one, there's no evidence in the record that it was owned by the bypass trust. The evidence in the record is the answer, where he admitted that he owned the property. Well, but I'm saying the district court accepted that and ruled on the basis that even though Steelman was a trustee, he still had control. Right? In his order, he said even if the property had been transferred to the bypass trust... So, I'm asking you, what is your, you know, what is your response to that? To the argument that that finding was erroneous? My response is that as to Denny Steelman, the question is if he was operating a trader business. And all the evidence in this case indicates that he was... You're not answering my question. My question is the district court said in spite of the fact that he was a trustee, he still had control of the trust. And yes, and I will... Sure. Right? So, I think... Now, how is he wrong on that? The... What do the regulations say? If we're looking at whether he controlled the bypass trust for the purpose of making the bypass trust liable... Yes. That's a legal issue that hasn't been determined yet. And I don't think that was... Well, wait a minute. And I don't... This judge determined it right here in this order. I don't think he did it on a legal basis. I think he was looking at... So, you disown that conclusion? I think he was indicating that he controlled the property in the bypass trust. And he controlled the property... Right. He controlled the property by leasing the property to Action Electric. But that's not the test for control under the regulations. But that's... But leasing the property, if Denny Steelman leases the property to Action Electric... He didn't lease it. The bypass trust leased it. There's no evidence of a lease between the bypass trust. According to this district judge, the bypass trust is the lessor. I don't believe that's in the order. And there's certainly nothing in the record that would support that. Why is it in the district judge's order, then? The district judge's order indicates that he controlled the trust by taking the property and leasing it to Action Electric and by personally, not on behalf of the trust, but by personally claiming rent and collecting rent for that property. The other side says the regulations apply. Ordinarily, wouldn't the regulations apply to a trust? It's a confusion of whether we're looking at whether the trust is liable or if we're looking at if Denny Steelman is liable. Because the issue in this case is whether Denny Steelman operated a trade or business. And in his answer, he admitted he owned the property. In discovery, he submitted a property detail record indicating that he personally owned the property. Now you, when I say you, I mean your client, the trustees, have a case pending against the bypass trust? Yes. All right. So you're contending, are you contending in that case that the bypass trust is the owner and is liable for the withdrawal? We're contending that the bypass trust also operated a trade or business, and we're contending that they The trade or business was leasing of the property to Action Electric. They held multiple properties. They held other properties as well. Well, let me ask you this. In your view, can you recover both in this case and in the case against the trustees? Yes. For the same Washington property? It's not the Washington property. That's not what we're after. That's just an essay. Oh, I see. The other case doesn't involve the Washington property at all? It involves that property and many other properties as well. I'm asking with respect to the Washington property. You're claiming against both the trust and against Steelman. Is that right? No. No. I don't think I'm following what you're saying. They have admissions in both cases. In one case, they've admitted that the property is owned by Denny Steelman. In another, they've admitted that it's owned by the bypass trust. It does appear that the property was transferred to the trust, to the bypass trust. The evidence in the record indicates that it was transferred to the overarching Inter Vivos Trust, which is the revocable trust. That's the document that they put in on summary judgment. I thought they said that when she died, it went to an irrevocable trust. Say that again? When the wife passed, when his wife passed away. There's no documents to support that. There's nothing in the record to support that. Well, is it true? I'm unsure. I mean, based on what's in the record, I'm unsure. But I think, again, I think the important part to this is in sort of notwithstanding the reasoning of the district court, there's other grounds on which this court can affirm the summary judgment. Mr. Steelman admitted he owned the property. He submitted documents that he admitted the property. He submitted leases showing a lease between himself personally and Action Electric, not a lease between the bypass trust. It was between Denny Steelman as an individual. Action Electric. That after the trust, after the property had been transferred to the trust? It was. Before. It was before and after. And to go further, in Action Electric's bankruptcy, which has been discussed. Are those after documents in the record of this case? Yes, they are. Can you give me a citation? Yeah, it's supplemental excerpts 44 to 54. There's two leases. They go. 44 to 54? 44 to 54. Thank you. There's two leases. The last lease ends in October 2010. But after that time period, and this is when Action Electric filed their bankruptcy. When did his wife die? June 2010, I believe. August 2010. But in Action Electric's bankruptcy, Action Electric listed Denny Steelman as an individual, as a creditor, and indicated rent owed by Action Electric to Denny Steelman through October of 2012. So this is two years now after the wife passed away. In addition, and that proof of claim was signed under penalty of perjury by Denny Steelman as the president. Denny Steelman also submitted a proof of claim in that case, signed under penalty of perjury, claiming the rent through October of 2012. And the cases are clear that the idea of operating a trader business looks at really not passive investments. It looks at business. And negotiating leases and collecting rent based on property leased to the withdrawing employer is categorically a trader business under Ninth Circuit and every other circuit's law. I've got the supplemental excerpts of record. Could you tell us again where Steelman said it was his property? The complaint is at excerpt 90, and it's paragraph 13. And the response, the answer is that supplemental excerpt page 10, also paragraph 13. Where can I? All right. What page, though, in the supplemental excerpts of record do I look at? Ten. Ten, okay. Ten. All right. So which paragraph? 13. Defendant admits that he owned the identified property, real property that he owned past tense. Defendant lacks sufficient knowledge or information to affirm the remaining allegations. And so where can we find what paragraph 13 said? Yeah, it's excerpts of record 90. That would be the complaint? That's correct. Excerpts, so we have to go to the other document? Yeah, that's correct. All right. I won't take your time to do that right now. Thank you. The other document that was identified there as well is the title document that he produced indicating that he owned the property personally. Is that supplemental record 75? 75, okay. It's going to take a long time to get there. Sure. As far as the bankruptcy admissions, the petition where he indicated that he was making a claim for rent based on his personal lease, is that supplemental record 60? And his proof of claim is that supplemental record 62 to 66. I have nothing further unless there's any other questions. Judge Alsop has a question for you. It'll take me too long to decode page 75, so I don't have any more questions right now. Thank you. Thank you, counsel. I'll give you a minute for rebuttal. Thank you, Your Honor. Just briefly in rebuttal, I think the very issue that you're struggling with here is indicative of why summary judgment should not be granted in this case. The district court expressly did not make a ruling as to who owned this property. There was a material. Why did he admit in his answer that he owned the property at the time the answer was filed? He didn't own the property. Unfortunately, Mr. Steelman was ill and elderly. He died prior to the summary judgment. It was only when the trustee of the estate, Mr. Liebeck, began examining records. That's when he found, and respectfully with respect to Mr. Moorhead, there is a record. There was a superior court order that put the Washington Avenue property. It took it away from Mr. Steelman and it put it into the Intervivo Trust, and it was then subsequently allocated from the Intervivo Trust to the Irrevocable Trust. And so to the extent that Mr. Moorhead is saying that he believes or he can't be sure whether the Bypass Trust owned it or not, we have a second matter where their entire proceeding depends upon the Bypass Trust owning the Washington Avenue property. And, in fact, we just submitted a stipulated fact saying that the Bypass Trust owned the Washington Avenue property. If it didn't, they could not go after the Bypass Trust. Why don't you say counsels identified several places in the record where Mr. Steelman had said he owned the Washington Street property? Of course, the answer did say that, but do you agree that there are all these other record references that show ownership by Steelman? At one point, Mr. Steelman absolutely did own the property. He bought it in his individual capacity. It was then transferred, however, to the Irrevocable Trust. What year was that? That was upon the death of Ms. Steelman. That was in 2010, so it was three years prior. Weren't there statements, though, after that where Steelman said that he owned the property? Mr. Steelman, well, Mr. Moorhead cited a lease agreement. The lease agreement all took place prior to her death. There was no lease with Mr. Steelman at the time after Ms. Steelman's death. Are there any documents after her death where Steelman said he owned the property? There's the answer to the complaint, which doesn't specify a date. It just says he did own. It was past tense. And as Mr. Moorhead said, in the bankruptcy, he did identify himself as a creditor. But the problem is, irrespective of what he said, somebody owned the property at the relevant time, at 2013. It couldn't have been both of them. And contrary to what Mr. Moorhead has said, they are, in fact, going after both. They're going after Mr. Steelman, saying he owned the Washington Avenue property and was in a trader business. Then they're going after the Bypass Trust and saying the Bypass Trust was also in a trader business. Okay. All right. Thank you. Thank you very much. Thank you, counsel. The matter is submitted.
judges: Tashima, Paez, Alsup